And we will call Weinberg v. Kaplan. Good afternoon. Have your way to the podium. Good afternoon. May it please the court, Peter Oda for the appellants, Dr. Weinberg and Ms. Ninny. I'd like to reserve two minutes for rebuttal, if I may. Very well. You may. Please continue, sir. Okay. Thank you. The suit was filed originally in Mercer County. It was removed to the federal court, and the defendant filed a motion with answer based exclusively on Ray's judicata, which So let me ask you this question. Certainly. You don't want to go through that procedural stuff, right? Okay. Do you agree with the notion that the bankruptcy court's confirmation order of a reorganization plan constitutes a final judgment for Ray's judicata purposes? Do you agree with that proposition? I agree with it. I agree with that proposition, but if I may, I think that the case law interpreting Ray's judicata in this circuit suggests that judicata only applies when an action has been, where a matter has been fairly and fully litigated. So the statement that Your Honor has just made, I agree with. But the question is whether Ray's judicata even applies to the claim that was asserted here. That's a different element of the Ray's judicata. I think what Judge Greenway is doing, we're trying to narrow what's in dispute. And if you agree a confirmation plan is a final judgment for Ray's judicata purposes, that's point one. The second is would you agree that the plaintiffs and the privities, I assume that's where you're going, are not disputes that were focused on the third element, which is the same cause of action. Absolutely. I agree with that. Thank you. You've got two claims here. You've got the relief from stay aspect of malpractice. Yes, Your Honor. Which is different from the other because the relief from stay was really included in the fee application. As you call the fee application, I get fees because I did this. That's correct. And the point there is the debtors at that point should speak now or forever hold your peace. Should they not? That's correct. Okay. So that really, Judge Thompson was right. That order on that fee order should be barred by Ray's judicata because no one piped up and said, wait a minute, those services were rendered improperly and you really shouldn't get money for this. Your Honor, I'm not certain I agree with that because a fee application puts the, especially when the attorney is still representing the client, he puts the fee application was made, there was no objection. There was no objection. The attorney is still representing the client. The client doesn't have the sophistication. Oh, sure they do. You see it all the time. And there's the case law. It puts the value and quality of the services of the attorney squarely at issue. And if the debtor is not happy because look what happened here. It's totally, the judge didn't even know what was going on because it was so poorly explained. The debtor said, can you pipe up and say, you know, Your Honor, he really didn't do a good job there. You know, give him $2,000, not $25,000. Your Honor, it's clear that that didn't happen. Exactly. But it obviously would have been better had it happened. But I think the question is what happened moving forward, which was the debtor got new counsel who raised these issues with Judge Ferguson, who in September of 2015, after being told in pretty elaborate detail what the nature of the claims was, said, I'm going to, you know, she ruled in the way she did and said, without prejudice to you filing a malpractice action. Are you saying you are lying on her? I don't see why I wouldn't. Did she say wait until the proceeding is over and then go into district court and initiate it? She certainly wasn't giving them license to do that. I mean, for all, she might have intended, you know, bring your malpractice action. And it should be brought right here in the Chapter 11 proceeding. We can't really take anything from what she said, can we? Your Honor, I respectfully suggest that we can, because if Judge Ferguson had the case and dealt with those motions and felt that the appellants, the debtors there, had waived their claim or the claim was barred by any preclusive doctrine or was waived, I think a fair conclusion was she would have shut them down. No party on that transcript raised the res judicata defense. That raises a more interesting issue, Your Honor, is that Mr. Kaplan was in that case defending himself and he didn't raise this idea that, wait a minute, this was not set forth in the plan. A claim for malpractice was not set forth in the plan and it's barred by res judicata. He, that was, there was no mention of that at all. So I guess my point to Judge Rendell is I don't think we can infer anything for what could happen for Judge Ferguson as being immunizing the effect of the confirmation plan on a future proceeding. She simply was resolving the motion in front of her and say, without prejudice, file. That doesn't mean file and be able to continue your action. She just was not taking a position one way or the other. So I don't know if you can infer much. Plus, let's remember the sequence here. The plan, the first motion to compel the payment of those fees was in December of 2014. The plan is confirmed March 30, 2015. March 31, 2015, what happens? The clients, your clients, give this very lengthy letter mentioning malpractice. Meaning they could have brought this to the court's attention during the course of the plan as an objection to the administrative claim and they didn't. Correct? They could have, yes. So they chose not to. So didn't they give up their fair and full opportunity to raise that claim at the moment that the judge who saw the nature of the services provided could have actually weighed in? No, I don't believe they weighed the claim because a fee application in that context really doesn't allow for the client the full rights that they would have if they filed a malpractice action. What priority do you have for that proposition? I have seen case after case which said exactly that's exactly what the debtor is supposed to do is if you do not get the services and the value and the quality of the services put squarely before the court. Your Honor, the ongoing damages and the fees that were going to be incurred through different counsel were going to be an element of damages in the case. Matter of fact, that's what the Trank v. Posteloff is talking about a much more basic point, right? And the more basic point is before you think of what can happen subsequently, just in dealing with the fee application, if you think you've been had, to put it in some colloquial sense, if you think you've been had and the bill is $100,000 and you think that there's been malpractice, you're going to say, hey judge, I don't want to pay $100,000. This was worth like $20,000 and I should get a refund on that or a discount. So why is it improper for us to come up with a rule, maybe a rule, maybe not, of the fee application is going before the court. Any issue of malpractice should be heard at the same time. Doesn't that just make sense? Your Honor, I don't believe it makes sense because if a legal malpractice case is brought in state court, which is where this originated, by the way, the client would have 450 days of discovery, the right to take extensive discovery, the right to retain experts. You get to do that as an adversary proceeding if you chose to in the bankruptcy. Absolutely. So you'd still have all those tools, those opportunities, et cetera, all available in that form. And to follow on what Judge Greenaway was saying, there were actually two opportunities for the client to raise their concern. One was in opposition to the fee application that Judge Rendell was speaking of. And then through that confirmation process, when that administrative claim was sitting at the beginning of the plan in the chart, there could have been another opportunity to say, hey, not only did we have problems before, judge, thank you for reducing the fee, but that problem continued with where I think Judge Rendell might have been going, with the failure to file the monthly reports. And so there were two opportunities to raise with the very judicial panel who could have adjudicated malpractice that was potentially occurring in front of her eyes, and it wasn't raised. So why should a debtor be able to proceed outside of that form and withhold it when you have all the tools that you were saying you'd have available to you in the state, with discovery experts and the like, not bring it up at the moment that it made the most sense? Your Honor, first, I don't think, I believe that the defendant's argument in this case was that the failure to list it in the plan was raised judicata. I don't believe that they were saying that it had to be brought in that cause of action, or that cause of action had to be litigated in the bankruptcy court. I guess it could be. Is it your contention that if this suit is permitted outside the bankruptcy court and it goes forward and your clients get $30,000, that that's theirs to keep? Yes, I believe it's theirs to keep, Your Honor. Why should it not have been, since the malpractice occurred during the proceeding, and was something that harmed, that should have come before the court, or arguably should have come before the court at that time, and had it done so, that money would be available for creditors. Why should your clients be able to take that asset that was clearly an asset during the case and profit from it later on? Your Honor, because the claim involves money that they were required to pay to the Kaplan firm. Well, it's money in the estate. Okay. It's the money in the estate from which the creditors get their payment. Okay. If there's $100,000 in the estate and $20,000 goes to lawyers and shouldn't have, then that depletes it by $20,000 and creditors only get $80,000. But if the malpractice is brought and money is brought into the estate, so there's $120,000 because of these malpractice claims, that's property of the estate, there's more for creditors. Why should we announce a rule that permits someone to kind of tiptoe out of bankruptcy and then file a malpractice action for something that happened in bankruptcy and keep the proceeds? Your Honor, the money that the debtors – the money paid to Kaplan, to the Kaplan firm, I could see that argument better and more clearly than I can see money they had to pay to a different law firm. If they had to spend money and pay to a different law firm in order to correct the mistakes of what they believe Mr. Kaplan made, I think that's different. But that was also in the context of the bankruptcy proceeding. That's where that money came from. Certainly. You're not saying it's out of their pockets outside of bankruptcy. No, it's in the bankruptcy. I don't have a dispute with that. But the point is, shouldn't all of that be resolved in the bankruptcy so that whatever assets there are are liquidated during the proceeding? If this was an asset at the time because he blew it and filed these operating reports and the case got converted and clearly shouldn't have, isn't that an asset of the estate that should have been included in the disclosure statement and said, oh, by the way, these are the assets so the creditors can say, wait a minute, if we have this asset, let's not confirm the plan until it's liquidated so there's more money available. Your Honor, I theoretically agree that it's an asset to the estate. Theoretically. It either is or it isn't. It is, Your Honor. It is, Your Honor. But the issue here was, I go back to the fair opportunity to deal with that issue. You can deal with these issues in bankruptcy. I mean, they have adversarial proceedings, as Judge Schwartz said. This happens all the time. Why aren't we bound by Eastern Minerals on this very point? Right. Right? So Eastern Minerals says that the claim has to be so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time in the bankruptcy form. I think the questions from the entire panel have focused on that question. Now, that's our binding precedent, which my judge I'm unfamiliar with. But why isn't that binding here? I focused on that as I was reading the case because I figured that's where the court was headed, and I was right in that. Because, Your Honor, a malpractice case is different, I believe, than other cases because it involves the piercing of the attorney-client privilege, or the waiving of the attorney-client privilege. There are many instances where a malpractice issue comes up. Can you explain that to me? The attorney-client privilege protects communications between the attorneys. Right. If the client files suit against the attorney, the attorney-client privilege is out the window. But I don't know how that really affects the cause of action here. So your point is the waiver will be so broad that it will injure the client in the entire bankruptcy proceeding. Right. In the New Jersey state court system, malpractice cases are typically reserved. Wouldn't you just make a motion to seal on that? Is this in your brief? No. I'm just talking about why it's disruptive to have a rule that would allow for this malpractice case to have been addressed there. And that's why I read Judge Ferguson's comments in the motion to mean what it said, which was, I'm resolving this motion without prejudice to you filing a malpractice action. If that wasn't contemplated, I'm not certain why. I don't think anything should have been said. She was ruling there on a motion to force or to prevent the – he wanted to get the payment and they wanted to object to the payment. She basically said it's already done. The fee order has been entered. It's done. If you have some malpractice action, okay, that's fine. But it's already done. In fact, she's reinforcing the fact that that fee has already been awarded. The fact that she said something about the malpractice action was because that's what they were saying was a defense to the fee. And she said, well, that's all well and good that this fee has already been awarded. And she's therefore saying that should have been raised at the time of the fee application. That's all I have. Thank you. Thank you so much. We'll get John McDonnell. Good afternoon, Your Honors. Wayne Wright of Capehart and Scatcher on behalf of Scott E. Kaplan, LLC. The court had asked us to address the Eastern Minerals case, and I know Judge Greenaway had made reference to it. That case, I think, hits on, and there's a footnote in there that hits on the issues that I think the panel has raised this afternoon. Eastern Minerals, the court there concluded that the creditor's claim against the principal of the debtor for alter ego liability had not been resolved by the bankruptcy plan. So does this mean that in every bankruptcy proceeding, because I presume where you're going is, yes, it was actually litigated or it was so close, something actually litigated. Okay. Right now. So my question is this. Would that as a premise is now our rule going forward that in every bankruptcy at the time of the fee application, if the debtor has any qualms about representation, the malpractice claim action needs to be brought at that time? Is that the holding that you're seeking from this court?  I think what we're asking this court to say is that if a debtor in a Chapter 11 case files, submits, or proposes a Chapter 11 plan that provides for payment without restriction of a previously approved application, that once that plan is approved, once that plan is confirmed by the court, the debtor has now is precluded from asserting any claims against that professional for malpractice in connection with the bankruptcy case. Is it the plan or the fee application? Because to my mind, Eastern Minerals says the plan is not specific enough. The plan really didn't provide for payment. That was already ordered previously. Well, I think, Your Honor, it's the combination of both items. It's a combination. Because the plan here, the plan specifically provides, as one of Your Honors pointed out, there's a table in there that says there's a fee application from Mr. Kaplan for $26,000. And nothing's said about being disputed. Nothing's said about it being any issues or any counterclaims or offsets. It says it will be paid upon confirmation of the plan. So that's why I'm saying I think you have both elements. Yes, I think as soon as the court has granted the fee application, that there now starts is the first step in the debtors being precluded. And the second step, the part that seals the deal, is when their plan says, okay, we're going to pay that fee application and ask the court to confirm that. So that means that you're requiring us, right, to say going forward that if you have a legal malpractice claim, it's got to be made sufficiently before the reorganization plan and the confirmation order is entered. That's true. Because if not, you're going to say it's waived. Right. If your plan refers to your professional and it says we're going to pay our professional's fees, because there are some instances, there are many plans that it's not unusual for plans to say that there will be fee applications after the plan is confirmed. In this instance, it would be okay to bring the claim then. Yes, and that's not the issue here. The concern I would have in that instance is that if a plan says something that the professional will be paid and the plan says also fee application will be filed within 90 days of the plan being confirmed and there's nothing in there about a malpractice claim, that raises some concerns on my part, but that's not the issue we have here. Let me mention something else, and Judge Schwartz alluded to this. We've got the fee application having to do with the automatic, relief from automatic stay malpractice. Then there's this other piece of malpractice, the failure to file the operating reports, which results in the conversion of the case, basically. No fee application is ever filed for that. Kaplan never sought fees for that. It was never litigated, and now it's brought outside of bankruptcy. Can you really say that there's res judicata having to do with that? He never even asked for a fee for that. It's never even been brought before the court as to whether the services were rendered or not. Judge Rendell, it was brought before the court in the context of the plan, because a plan says we're going to pay Mr. Kaplan, I think, $26,000 was the number. We know what that was for. Services rendered prior to June. But I think that looking at this court's decision in the Oneida case, the court there emphasized the importance of the bankruptcy code. That's a different case. There were four pieces of litigation involving the bank's security interest in that. And then after the fact, they say, oh, you know, we want to question the bank's contract. Well, that's not what happened here. In fact, there was nothing raised in the proceeding here about the operating reports. Right. But, again, the fact that the debtors have, because in their malpractice claim, one of the arguments they made is they've incurred additional attorney's fees in connection with the issue of now filing the annual reports and things of that kind. So they're obviously seeking a set off. They have a claim. Our position is that if they believed, and clearly they did from the timeline, given the fact that they sent a letter out shortly after the plan was confirmed, they obviously were in possession of enough to say in their plan, our plan is not to pay Mr. Kaplan anything, or our plan is only to pay him $2,000. And that would have teed the issue up for the bankruptcy court. That would tee the issue up for the other creditors. Well, that's an interesting issue. The fees were really incurred in the context of the bankruptcy proceeding, correct? Correct. So they were costs of the estate that had to be paid. They're paid by the debtors. Debtors. Right. As debtors. As compared to now they're back and they're the Weinbergs, non-debtors. The fees really weren't incurred by the Weinbergs. No, the fees were incurred in the context of the bankruptcy. And that also gets to the other issue here, and I think the panel pointed this out, is the bankruptcy court is uniquely suited to address, and the case law I think is very clear, that the bankruptcy court addresses issues with regard to professionals that it has appointed. That is a purpose for having, and that's why the case law is clear, that actions by a debtor against his bankruptcy attorney are dealt with in the bankruptcy court. Part of the reason is because it would yield assets to contribute to the estate available to other creditors. Correct. And also the other reason being is the bankruptcy court, given that it appointed the professional, has a vested interest in dealing with issues regarding the professional's capabilities, the quality, and the amount of their services and how much they're paid for. So in the timeline we have in this case, we have fees that were incurred that predated the, at least, disclosure of the failure to file the monthly reports. Time passes, plan is presented to the bankruptcy court with a fee award. Is it your position that it was before, at the confirmation proceedings, that the Weinbergs should have raised the fact that they should have been forgiven that earlier fee award, both because of the lack of good service plus subsequent nonfeasance? Yes. And so that's why you think it should be brought, number one. Number two is your second reason, because the claim, this malpractice claim, belonged to the estate and it should have turned it over so that everybody would know there was a potential of yielding more dollars that belonged to the estate, not the Weinbergs. Yes, because depending on the outcome of the plan, obviously less dollars for the professionals, potentially leads to a larger pot to pay to creditors. So looking at Eastern Minerals, it does have the footnote, I know, that one of you mentioned about the propriety of bringing a malpractice claim. So is it your view that Eastern Minerals has helpful language, but the facts are a tiny bit different? Because here we're talking about, in the Weinberg case, a debtor bringing an action against a service provider within the bankruptcy, trying to recover dollars or reimbursement for money paid, depending on where you look at it, as compared to Eastern Minerals, which was a fight among creditors. Yes, and because the debtor is uniquely suited, it's presenting the plan of reorganization. Its attorneys are drafting the plan. It has the capability of teeing the issue up for the court. I don't understand why you'd make that argument if the debtor's lawyers are the malfeasance, in essence. The fact that they're drafting it would be problematic. Well, in this case, so, and again, if we had a case that was the same lawyer all the way through. But we don't have that issue. We're not doing something that's going to be suing generous to this. We've got to think about what kind of rule are we creating. And one of the things that we've talked about is, would this put an obligation on a debtor, similarly situated, to have to bring their malpractice claim at that time or waive it? And the question is, let's say it was one lawyer or let's say it's two lawyers. That doesn't matter. I mean, the debtor's not always going to know that there's malpractice going on at that moment in time. How can we require the debtor to make the claim then? Because we have debtors who are represented by a well-regarded, well-experienced bankruptcy firm who had picked up the case after Mr. Kaplan had been replaced. I think what Judge Greenaway is asking about is a different scenario. That is, one lawyer represents the debtor for the entire proceeding, is unaware of any kind of malfeasance by counsel, learns about it after the plan is confirmed. Therefore, it's still like our case in that there's alleged malfeasance by the lawyer who represented him in the bankruptcy, but the client doesn't know it. Would that be a circumstance where this rule wouldn't apply? Yes. So we're, in essence, supposed to create a discovery rule exception. I understand the panel's dilemma, and fortunately we don't have that issue here, but I do appreciate that if... So you'd like the discovery rule exception? If I was representing the debtors here and I had that situation, yes, I would want the discovery rule exception. But I think the general rule is that if a debtor has been represented, I mean, if a debtor has a Chapter 11 case, it does not necessarily have to bring the malpractice action before the plan is confirmed, but it has to disclose its intention or its contention that it has a claim against the professional. So then you would say that the confirmation order doesn't have res judicata effect. If you agree with that, then... No, I... Rather, if that's your proposition, you would disagree with the proposition that the confirmation order should have res judicata effect. No, the confirmation order does have res judicata effect. It's a fact that if there's no reference in the plan that's confirmed by the bankruptcy court, there's no reference in that to any kind of claims, that is res judicata to prevent, bar, preclude, the debtors from pursuing a claim later on in some other proceeding. The claim is waived? The claim, yes. Because, you know... Throwing around res judicata, waiver... Well, and the terminology that the courts have used in this area have been somewhat fluid. But, you know, the basic notion is that claim preclusion can apply not only to claims that were actually pursued, but to claims that couldn't have been pursued. And what we're saying here is the claims that the debtors have against Mr. Kaplan could have been pursued, and as a result, because they were not addressed in the plan, that the confirmation of the plan makes a res judicata that precludes them on a claim preclusion from pursuing the claims in a separate fashion. I don't know if Eastern Minerals is going to let us do that. Well, Your Honor, I think Eastern Minerals, and the footnote that I wanted to reference the court to, it was footnote 16 in Eastern Minerals. And footnote 16 points the court to a case out of the Fifth Circuit that it's here, it's called Oshereau v. Ernst & Young, LLP, Enright, Intellogic, Trace, Inc., 200F3382. That was a case where the debtors sued their accountants after their Chapter 11 plan was confirmed. They sued their accountants. The accountants said, hold it, you didn't raise this at all in the Chapter 11 case. It wasn't raised at the end or prior to the plan being confirmed. And that would support the notion that, at least with respect to the relief from stay malpractice, that that's foreclosed, basically. But with respect to the operant, I'm still concerned about the operating report and the conversion aspect, which was never the subject of litigation or a fee request. And it's tough to square that with Eastern Minerals' statement that the relief sought against the parties are so close to a claim actually litigated in the bankruptcy court. I mean, with respect to the fee app and the relief from stay and the Oshereau case, okay, we've got that. But with respect to the conversion malpractice and the operating reports, you could say maybe it would be unreasonable not to have brought it in the proceeding, but it's not so close to a claim actually litigated. Well, it was litigated, Your Honor, in the sense that, again, the plan that was confirmed by the court identified Mr. Kaplan's and provided for payment to Mr. Kaplan in full without any reservation rights. Okay. I see my time is up. Unless, Your Honor, you have any further questions, I'll sit down. Thank you so much. Thank you. I'll wait until my rebuttal. Thank you. Thank you. I've just never heard that. That's great. So nice to see you. All right. Thank you, counsel, for certainly a well-argued case. We'll take the matter under advisement.